**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | **No. 1:10cr403** |
| | ) | |
| **CHARLES L. GRANT, JR.,** | ) | **The Hon. Anthony J. Trenga** |
| | ) | |
| **Defendant.** | ) | **Sentencing: March 4, 2011** |
| | ) | |

## DEFENDANT'S POSITION ON SENTENCING FACTORS

Pursuant to Title 18 U.S.C. § 3553(a), Federal Rule of Criminal Procedure 32, and Section 6A1.3 of the *United States Sentencing Guidelines*, the Defendant, Charles L. Grant, Jr., by and through his attorney, hereby notifies the Court that he has received and reviewed the Presentence Report ("PSR") and agrees with the Probation Officer's calculation of the offense level for the distribution offense (23), criminal history category (III), and advisory United States Sentencing Guidelines range of 57 to 71 months, restricted to 60 to 71 months as a result of the applicable mandatory minimum, plus a 60 month mandatory minimum for the 18 U.S.C. § 924(c) offense. Mr. Grant submits that the mandatory minimum sentence of 120 months is more than sufficient to achieve the purposes of sentencing in this case given that Mr. Grant's longest jail sentence before his instant arrest was 2 days, and given that his own destructive addiction to heroin was the driving force behind his distribution of the drug to others.

## BACKGROUND

On November 30, 2010, Mr. Grant pleaded guilty to distribution of heroin in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of drug distribution in violation of 18 U.S.C. § 924(c). Each count carries with it a five year mandatory minimum.

**ARGUMENT**

I.    **Legal Standard**

After *United States v. Booker*, the sentencing guideline range is advisory, and courts must consider the recommended guideline range as one of seven statutory sentencing factors enumerated in 18 U.S.C. § 3553(a).  *Booker*, 543 U.S. 220, 259-60 (2005).  Those factors include: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the following: the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. § 3553(a).

In *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. § 3553(a).  In two more recent summary reversals, the Court further made clear that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors.  *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009).  "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." 2009 WL 160585, at *2 (emphasis in original).  In other words, a sentencing court may not rely on the Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence

outside that range.  Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a).

## I.      Application of Sentencing Factors Pursuant to 18 U.S.C. § 3553(a)

### A.      The Personal History and Characteristics of Charles Grant

Charles Grant is a 29-year-old man who, by his own account, allowed his addiction to heroin "to almost completely destroy my life." *See* Letter from Charles Grant, attached as Exhibit 1.  It was not always this way.  The attached letters from his family describe him in similar terms: as a "person of compassion," a good kid "with a heart of gold," "without a mean bone in his body"; someone who went out of his way to help them and take care of his family.  *See* letters, attached as Exhibit 2.  But after the tragic death of his mother, his abuse of heroin and later distribution of the drug all but took over his life.

Mr. Grant grew up in a house with both of his parents who loved him dearly but did not get along with each other.  PSR, ¶ 46.  He struggled academically and, despite failing all of his classes in middle school, was socially promoted to high school.  PSR, ¶ 59.  In high school, he was formally diagnosed with various learning disabilities and recommended for special education classes. Ultimately, his father rejected the recommendation, and Mr. Grant was returned to mainstream classes.  *Id*.  He began smoking marijuana regularly and experimenting with other drugs.  PSR, ¶ 55. A year later, he dropped out of high school while in his second year in ninth grade.  PSR, ¶ 60. Although Mr. Grant, in his letter to the Court, attributes his decision to leave high school to his increasing use of drugs, his learning difficulties undoubtedly played a role as well given their severity.

Despite his early use of drugs, by age 18, Mr. Grant cleaned himself up, obtained his GED, and found steady work in the field of construction. *See* Ex. 1, Letter from Charles Grant. This period of sobriety lasted for over two years until his knee surgery in 2002. Following that surgery, he was prescribed Percocet, and became hooked. As he explains to the Court, "This was the beginning of my downfall. Within the span of two years I had become dependent on opiates. What started with Percocet progressed to oxycontin, and inevitably, heroin." Ex. 1.

Then he experienced tragedy. In 2005, his mother died after driving her car into a tree. PSR, ¶ 49. Her death came within a year of his grandparents' deaths with whom he was very close. Within another year, his maternal aunt died of an overdose, and his uncle died of cancer. *Id*. The letters from Mr. Grant's family all speak to the devastation he felt over his mother's death in particular. Mr. Grant himself acknowledges that he began to abuse heroin more heavily after her death. *See* Ex. 1. As his drug use increased, he lost his contracting business and all semblance of a normal life. *See id*.

It is was during this time period, from 2005 to 2009, that Mr. Grant incurred the three convictions that put him in Criminal History Category III: destruction of property[1], petty theft (shoplifting copper wire from Home Depot), and driving under the influence of drugs. All three were misdemeanors, and all three resulted in minimal sentences. He received a sentence of 2 days for the theft offense, and probation for the other two offenses. PSR, Worksheet C.

While Mr. Grant has sought treatment and had periods of sobriety in the last few years, PSR, ¶¶ 57-58, he always returned to using opiates, until his arrest in September 2010. Now, he regularly

---

[1]The destruction of property offense took place in 2004, but a conviction was not entered until November 2005, as a result of Mr. Grant's failure to abide by the conditions of supervision. PSR, ¶ 33.

-4-

attends AA/NA meetings at the Alexandria Detention Center, and wishes to obtain additional treatment once sentenced. *See* Ex. 1. With five months of sobriety behind him, Mr. Grant feels like he can see clearly for the first time in a long while. He recognizes the terrible nature of his conduct and the destruction it caused. As he commented to more than one family member, his arrest in this case may very well have saved his own life. Mr. Grant is thankful for that. With the impending birth of his first child, a son, he feels as if he has been granted another opportunity at life, and is hopeful about his future.

    B.    *Nature of the Offense*

    Mr. Grant pleaded guilty to two serious offenses: distribution of heroin and possession of a firearm in furtherance of heroin distribution. While not offered as an excuse, Mr. Grant's abuse of heroin is undeniably a part of this case. After he lost his contractor business due to his increasing drug use and the economic downturn, Mr. Grant began selling heroin as a way to pay for and facilitate his own addiction to the drug. He was able to establish a level of trust with different suppliers from whom he was buying heroin for personal use, and then purchase additional amounts to sell to various acquaintances in the Warrenton area.

    He also possessed a firearm at times while he was selling heroin. While possession of a firearm in connection with drug trafficking is plainly illegal, Mr. Grant was not otherwise prohibited from owning or possessing a gun. There was never any allegation that he ever brandished a gun or threatened anyone. Indeed, he has no history of violence against others.

C.      *The Need to Avoid Unwarranted Sentencing Disparities, Achieve Deterrence and Impose A Sentence That Reflects The Seriousness of the Offense*

The mandatory minimum sentence of ten years, one third of Mr. Grant's life, unequivocally sends the message that conduct such as his will be severely punished.  Such a sentence is more than enough to deter him and others like him who have never spent any appreciable time in jail, and were distributing drugs in order to maintain their own addiction.  In short, a ten year sentence for Mr. Grant is more than adequate to deter future criminal conduct, especially when coupled with extensive drug treatment both in and beyond prison.  For that reason,  Mr. Grant respectfully requests that the Court recommend placement in the Bureau of Prison's Residential Drug Abuse Program notwithstanding the fact that he is not eligible for early release from incarceration due to his conviction for possession of a firearm.  *See* BOP Program Statement P5331.02, Early Release Procedures Under 18 U.S.C. § 3621(e) (making inmates ineligible for early release whose offense of conviction involves possession of a firearm), available at http://www.bop.gov/policy/progstat/5331_002.pdf (last visited Feb. 26, 2011).

Given Mr. Grant's lack of significant criminal history, his own addiction to drugs, and the steps he has taken to begin to understand and control his addiction, the mandatory minimum sentence of 10 years is more than sufficient in this case.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Grant respectfully requests that this Court impose the mandatory minimum sentence of ten years.  In addition, Mr. Grant respectfully requests a designation to a Bureau of Prisons facility as close as possible to Northern Virginia.

Respectfully submitted,
CHARLES L. GRANT, JR.

By Counsel,
Michael S. Nachmanoff,
Federal Public Defender

By:      ____/s/_____
Shannon S. Quill
Va. Bar # 76355
Assistant Federal Public Defender
Attorney for Charles L. Grant, Jr.
1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0800 (telephone)
(703) 600-0880 (facsimile)
Shannon_Quill@fd.org (email)

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2011, I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to:

Jessica Knight
Special Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

A copy of the foregoing pleading will also be served by hand delivery to:

Nina Blanchard
U.S. Probation Officer
401 Courthouse Square
Alexandria, Virginia 22314

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing pleading will be delivered to Chambers within one business day of the electronic filing.

_____/s/_____
Shannon S. Quill
Va. Bar # 76355
Assistant Federal Public Defender
Attorney for Charles L. Grant, Jr.
1650 King Street, Suite 500
Alexandria, Virginia   22314
(703) 600-0800 (telephone)
(703) 600-0880 (facsimile)
Shannon_Quill@fd.org (email)